1    **TRANSCRIBED FROM DIGITAL RECORDING**

2                  IN THE UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF ILLINOIS
3                          EASTERN DIVISION

4    B. BROWN MEDICAL INC.,                )
                                           )
5                 Plaintiff,               )
                                           )
6                 vs.                      )  No. 11 C 6007
                                           )
7    CAREFUSION 303, INC. and HOSPIRA,     )
     INC.,                                 )  Chicago, Illinois
8                                          )  April 5, 2012
                  Defendant.               )  9:45 A.M.
9
                    TRANSCRIPT OF PROCEEDINGS - Motion
10        BEFORE THE HONORABLE SUSAN E. COX, Magistrate Judge

11   APPEARANCES:

12   For the Plaintiff:        NIRO, SCAVONE, HALLER & NIRO, LTD.
                               181 West Madison Street, Suite 4600
13                             Chicago, Illinois  60602
                               BY:  MR. RAYMOND PARDO NIRO, JR.
14
     For Defendant Carefusion: McANDREWS HELD & MALLOY, P.C.
15                             500 West Madison Street, Suite 3400
                               Chicago, Illinois  60661
16                             BY:  MR. CHRISTOPHER MICHAEL SCHARFF
                                    MS. BRIANNE McNICHOLAS STRAKA
17
     For Defendant Hospira:    JENNER & BLOCK LLP
18                             353 North Clark Street
                               Chicago, Illinois  60654
19                             BY:  MR. MICHAEL SKOPETS

20
                       PAMELA S. WARREN, CSR, RPR
21                        Official Court Reporter
                  219 South Dearborn Street, Room 1928
22                      Chicago, Illinois  60604
                             (312) 294-8907
23
     **NOTE:  Please notify of correct speaker identification.**
24   **FAILURE TO SPEAK DIRECTLY INTO THE MICROPHONE MAKES PORTIONS**
     **UNINTELLIGIBLE.**
25

1     (Proceedings held in open court:)

2          THE CLERK:  11 C 6007, B. Braun versus Carefusion.

3          THE COURT:  Good morning.

4          MR. SCHARFF:  Good morning, your Honor.  Christopher

5     Scharff from the McAndrews firm on behalf of defendant

6     Carefusion 303.

7          And with me is my colleague Brianne Straka.

8          MS. STRAKA:  Good morning.

9          THE COURT:  Good morning.

10          MR. NIRO:  Good morning, your Honor.  Raymond Niro,

11     Jr., on behalf of B. Braun.

12          THE COURT:  Good morning.

13          MR. SKOPETS:  Michael Skopets for Hospira.

14          THE COURT:  Okay.  A couple of things.  As I

15     understand it from reviewing the motion and the response, you

16     guys proposed a discovery schedule to Judge Gottschall that was

17     agreed to.  Correct?

18          MR. NIRO:  Right.

19          THE COURT:  But it was never entered?

20          MR. NIRO:  It has not been entered as of yet, that's

21     correct.

22          THE COURT:  Okay.  And how long ago did you do that?

23     I mean, was it at the beginning of the case as --

24          MR. NIRO:  It was in the -- it was in January, I

25     believe.

1      THE COURT:  Okay.  And is that --

2      MR. NIRO:  But it tracks the local patent rules.

3      THE COURT:  Right.  Is that still the schedule that

4  you want to follow?

5      MR. NIRO:  It is.

6      THE COURT:  Well, then I will enter it.  So at least

7  we have that done.  Okay?

8      MR. NIRO:  Thank you, your Honor.

9      THE COURT:  I think that was just -- it might have

10  been because none of the motions came in, and maybe -- maybe it

11  was just -- she just overlooked it.

12      But I'm happy to enter that.  So that takes care of

13  that.  So we will enter -- whatever the docket entry is, we'll

14  enter that schedule.  I mean, there is no reason not to

15  file -- follow the local patent rules in this case.  And it is

16  agreed.

17      So then we're down to sort of the motion.  And why

18  don't you both -- I read what you filed.  And it sounded to me

19  like this isn't so much about actual objections but sequencing.

20      MR. NIRO:  It is the (unintelligible) unfortunately to

21  involve your Honor in -- it is more the timing of the

22  responses.  The requests were served January 31st.  We're more

23  than two months out now.

24      And we just want a date when defendant Carefusion --

25      THE COURT:  Will --

1          MR. NIRO:  -- will comply with Rule 33(d) and identify

2    specifically --

3          THE COURT:  Okay.

4          MR. NIRO:  -- what documents they -- they are relying

5    on.

6          I mean, 33(d) is pretty unique in that it has to be

7    documents from which we can ascertain the answer as easily as

8    they can.

9          THE COURT:  Uh-huh.

10         MR. NIRO:  So I assume when you answer an

11   interrogatory that way, you at least have the documents in

12   front of you --

13         THE COURT:  No, you do have to do that.

14         MR. NIRO:  -- or have access to them.

15         THE COURT:  If you choose to answer them that way --

16         MR. NIRO:  Right.

17         THE COURT:  -- correct.

18         MR. NIRO:  And so I don't think it should be more

19   than, you know, two weeks from today, three weeks from today in

20   which they comply with Rule 33(d) and answer with specificity

21   which documents they rely on.  Or they can just give

22   substantive answers to the interrogatory.

23         THE COURT:  And is there a reason why that can't

24   happen?

25         MR. SCHARFF:  Yes, your Honor.  I can explain in a

1    little bit more detail.

2         First of all, as your Honor may have seen from the

3    appearances last week, my firm was just retained a little over

4    a week ago --

5         THE COURT:  Uh-huh.

6         MR. SCHARFF:  -- to take over representation.  One of

7    the first things that we did after being retained is to contact

8    Braun's counsel on Monday.

9         THE COURT:  Uh-huh.

10        MR. SCHARFF:  And we actually had what we thought was

11   a very productive phone call.

12        THE COURT:  Uh-huh.

13        MR. SCHARFF:  We agreed both to a date certain for

14   starting our production, and we agreed that (unintelligible) we

15   would be able to give them (unintelligible) volume of documents

16   in three weeks, and then also a date certain for substantially

17   completing all of our document production in three months.

18        On Tuesday all --

19        THE COURT:  Why do you need three months to produce

20   documents in this case?

21        MR. SCHARFF:  Well, your Honor, there is --

22        THE COURT:  And wasn't it incumbent upon your client

23   to seek a protective order if that's the case?

24        MR. SCHARFF:  Well, your Honor, normally -- normally

25   in large patent cases we have -- we're talking about six

1    patents in suit, a --

2            THE COURT:  I do a lot of patent cases.

3            MR. SCHARFF:  Yeah.

4            THE COURT:  I know they are complicated.

5            MR. SCHARFF:  Yeah.  We're talking hundreds of

6    thousands, if not over a million pages, of documents.

7            THE COURT:  Right.  But the rules are pretty clear.

8    And I know this isn't -- I know you're new to the case.  You

9    know, if you have a -- if there is an issue with discovery --

10           MR. SCHARFF:  Uh-huh.

11           THE COURT:  -- you know, the thing to do is not to

12   just not answer, it is to -- you have an affirmative obligation

13   to come in and tell the Court why you can't comply --

14           MR. SCHARFF:  Uh-huh.

15           THE COURT:  -- with the rules which set -- which stage

16   out when discovery is due.  You can't just, you know what -- no

17   matter how complicated it is --

18           MR. SCHARFF:  Yeah, I -- I agree with you.  And, you

19   know, we would have -- you know, we can orally make a motion

20   for protective order now.

21           Our point is that we actually had come to a reasonable

22   time frame for getting them our documents that was agreed to on

23   Monday.

24           Then on Tuesday all that we had left to do was to file

25   a stipulation to remove this hearing from the calendar.

1          THE COURT:  Uh-huh.

2          MR. SCHARFF:  But Braun's counsel reneged and instead

3    has insisted on a few conditions that are the real sticking

4    points.

5          First of all, they have asked for two months, instead

6    of three months, for wrapping up the discovery.  That's

7    probably still doable.  Our main issue was that Braun wants

8    that to be a hard and fast cutoff, after which we would not be

9    allowed to supplement at all.  Well, Rule 26(e) contemplates

10   and permits supplementation.

11         You know, here we have a close of initial discovery in

12   October.  We're not trying to play games here, your Honor.

13   We -- we will perform a good faith search and produce

14   everything that we have within that time frame.  But there may

15   be follow-up discussions with Braun's counsel, documents

16   uncovered in depositions, a very small trickle of documents

17   that we may have to produce, you know, up to the close of

18   discovery.  And we think that that's reasonable.

19         The second --

20         THE COURT:  What do you mean up to the close of

21   discovery?  I mean, if --

22         MR. SCHARFF:  Well, if --

23         THE COURT:  -- if -- you're right, I mean, sometimes

24   things evolve in such a way that documents don't get produced

25   till later.  But if depositions have been taken about subject

1   matters and you haven't produced a document --

2           MR. SCHARFF:  Uh-huh.

3           THE COURT:  -- and then they have to redepose

4   somebody, that's going be on your bill, not theirs.

5           MR. SCHARFF:  Yeah.  Yeah, we're --

6           THE COURT:  That's the problem with --

7           MR. SCHARFF:  Yeah, we're talk --

8           THE COURT:  -- with things trickling in --

9           MR. SCHARFF:  Right.

10          THE COURT:  -- because everything else -- you know,

11  you guys always want to see everything before you take

12  depositions --

13          MR. SCHARFF:  Uh-huh.

14          THE COURT:  -- or substantially everything.  And so --

15          MR. SCHARFF:  Sure.

16          THE COURT:  -- I don't want any -- either side to be

17  penalized by late production.

18          MR. SCHARFF:  Uh-huh.

19          THE COURT:  You would have to then agree we have to

20  reopen that deposition to allow a particular deponent to talk

21  about whatever it is that wasn't produced that, you know, was

22  in your possession, including (unintelligible).

23          MR. NIRO:  And that was our concern, Judge, is what

24  they were talking about is two months out from now, which is

25  four months from the date our requests were served, they would

1   substantially complete their production.  Well, what does that

2   mean?  And we start taking depositions, and then documents are

3   produced right before the deposition or after.  I mean,

4   substantially complete is not good enough.  We need a

5   certification that after a thorough and complete and good faith

6   search they have produced all responsive --

7               THE COURT:  Well, they have to cer- --

8               MR. NIRO:  -- non-privileged documents.

9               THE COURT:  Well, they have to certify it -- to your

10  point, you have to certify it regardless.

11              MR. SCHARFF:  Right.

12              THE COURT:  And you have to verify it regardless.

13              MR. SCHARFF:  Yes.  And, your Honor, that --

14              MR. NIRO:  That's what we're asking for.

15              MR. SCHARFF:  And that we agreed to.  We agreed that

16  we would perform a good faith diligent search and produce

17  everything.

18              What we're talking about is, you know, if -- if

19  Mr. Niro says, well, you know, what about some other document?

20  And this document that wasn't uncovered during our original

21  good faith reasonable search what we're talking about is we

22  don't want to have a two-month deadline, after which any

23  document we may find after that is completely barred from the

24  case.

25              THE COURT:  It is not that it is barred from the case,

1    but you will have -- I mean, your duty is to produce responsive

2    documents.

3              MR. SCHARFF:  Uh-huh.

4              THE COURT:  So if there is something that you don't

5    produce, which you really could have produced --

6              MR. SCHARFF:  Uh-huh.

7              THE COURT:  -- the burden is going to be on you to

8    tell me --

9              MR. SCHARFF:  Yeah.

10             THE COURT:  -- why it is you can't find it the first

11   time.  If it is a result of them -- you saying, okay, we

12   understood you meant this --

13             MR. SCHARFF:  Uh-huh.

14             THE COURT:  -- now we understand you mean that, you

15   know, those things happen --

16             MR. SCHARFF:  Okay.

17             THE COURT:  -- in complicated litigation.

18             What I don't want to see happen is, you know, you

19   produce some stuff now, and then most of the stuff gets

20   produced after the fact.

21             MR. SCHARFF:  Yeah.

22             THE COURT:  Basically we have wasted a lot of time

23   taking depositions that we don't have a full record on.

24             MR. SCHARFF:  Yeah.

25             THE COURT:  So -- and I think two months should be

 1    fine --

 2              MR. SCHARFF:  Uh-huh.

 3              THE COURT:  -- because you have had four months.

 4              MR. SCHARFF:  Sure.

 5              THE COURT:  And it is -- and that's a long time to

 6    respond, even in a big case.

 7              MR. SCHARFF:  Yeah, and we -- as we told Braun's

 8    counsel we anticipate giving them a very significant volume in

 9    just three weeks.  As soon as we were retained, we immediately

10    begun reviewing these documents and get additional documents

11    from the client.  I mean, we really are not sitting on our

12    hands here.

13              And we completely agree that, yes, we -- we're not

14    trying to play games and say they (unintelligible) give us 60

15    percent of our documents in two months.  We will give

16    everything that we find, you know, pursuant to that reasonable

17    good faith search.

18              MR. NIRO:  If two months from now they can give us

19    that certification, that's -- we have no objection.

20              THE COURT:  All right.  Well, that's great.

21              MR. NIRO:  For the document production, on the 33(d),

22    I think that should happen earlier because they should already

23    have an idea of what they were relying on when they cited

24    33(d) --

25              THE COURT:  That's true.

1          MR. NIRO:  -- in the first place.

2          MR. SCHARFF:  Well --

3          MR. NIRO:  So I would suggest two weeks, three weeks

4    for the 33(d).  And if the full document production in response

5    to all of our requests, which is document requests which is

6    broader than interrogatories --

7          THE COURT:  Right.

8          MR. NIRO:  -- that can -- that can take two months.

9          THE COURT:  Yeah, your client had to have read them

10   and decided the best way to answer it is based on information

11   in their possession --

12         MR. SCHARFF:  Uh-huh.

13         THE COURT:  -- at the time.  Otherwise they shouldn't

14   have answered the interrogatory that way.

15         MR. SCHARFF:  Yeah.

16         THE COURT:  (Unintelligible).

17         MR. SCHARFF:  I have a couple of responses to that,

18   your Honor.  First of all, on Tuesday Mr. Niro had represented

19   that he would give us a month.  This -- the two or three weeks

20   now is new.

21         Second of all, I think a lot of the concern is coming

22   from the fact that Carefusion, in its initial interrogatory

23   responses, had relied heavily on 33(d).

24         THE COURT:  Right, which is a way of not answering the

25   question.

1      MR. SCHARFF:  Yeah.

2      MR. NIRO:  Right.

3      MR. SCHARFF:  And as we told Mr. Niro, we are going to

4  be supplementing shortly to actually give substantive real

5  answers to his questions, dates, facts.  We're going to be

6  removing a lot of the reliance on Rule 33(d).

7      THE COURT:  Uh-huh.

8      MR. SCHARFF:  There are still a couple of

9  interrogatories though -- for example, there is one that asks

10  us to identify every communication that Carefusion has had with

11  anyone regarding any time regarding its patents.  We think it

12  makes a lot more sense to have that identification be done

13  commensurate with the completion of the discovery so that we're

14  just doing it once.  Otherwise we're having to redo all --

15  review all the --

16      THE COURT:  You know, the problem with

17  everything -- everything you say makes perfect sense.  But this

18  is why you come to a Court and you move for protective order.

19  You're four months down the road, and basically it is like

20  we're starting over here.

21      MR. NIRO:  Yes.

22      THE COURT:  And that -- and I have to say that -- that

23  doesn't strike me as completely fair to the other side.  And I

24  -- again, these weren't decisions you made as counsel, and I

25  totally understand that.  I'm not -- this is not personal.

1    But, you know, we got to get things moving along here.

2          MR. SCHARFF:  I completely agree and understand.

3          THE COURT:  I mean, I wouldn't --

4          MR. SCHARFF:  We're doing the best we can.

5          THE COURT:  -- have briefed this -- personally --

6          MR. SCHARFF:  Yeah.

7          THE COURT:  -- and, you know, since you're going to be

8    with me now, I don't brief motions to compel unless there is a

9    legal issue.  You file a motion to compel, we have a hearing,

10   and then I decide if there is something that you will need to

11   brief.

12         But, you know, this -- this kind of stuff is stuff we

13   can deal with orally.  So you can start saving your client some

14   money going forward.

15         MR. SCHARFF:  Okay.

16         THE COURT:  Answer the interrogatories in three

17   weeks --

18         MR. SCHARFF:  Okay.

19         THE COURT:  -- under verification.

20         MR. SCHARFF:  Okay.

21         THE COURT:  If you are relying on documents and you

22   need additional time to produce those documents, you can at

23   least identify what they are.

24         MR. SCHARFF:  Okay.

25         THE COURT:  Okay?  That way it is two months for the

1    documents, three weeks for the verified interrogatory answers.

2    You do your diligence search.

3            Everybody understands here -- and there is a

4    transcript running -- that if for some reason something isn't

5    produced within that two-month -- which is actually a four-

6    month period -- the burden will be on you to explain to the

7    Court why it is it wasn't --

8            MR. SCHARFF:  Okay.

9            THE COURT:  -- if it has some prejudice to plaintiff.

10           If it doesn't --

11           MR. SCHARFF:  Okay.

12           THE COURT:  -- then who cares?

13           MR. NIRO:  We won't even object if it --

14           THE COURT:  You know, if there is --

15           MR. NIRO:  If there is no prejudice and it was

16   something that they --

17           THE COURT:  But if there is a deponent who, you know,

18   for some reason they really thought they would have liked to

19   have shown them that document, well, then that's probably going

20   to be on your dime.

21           MR. SCHARFF:  Uh-huh.

22           THE COURT:  I mean, that's the best way to deal with

23   that.

24           MR. NIRO:  That's fine.

25           THE COURT:  But there are things that happen --

1      MR. SCHARFF:  Uh-huh.

2      THE COURT:  -- in cases -- you know, especially cases

3  involving lots of different things.  But -- but, I mean, I'm

4  not going to say -- you know, we're not going to have an

5  absolute bar here.

6      Okay.  So that's two months -- two months, three weeks

7  under the terms outlined in open court.  The schedule will be

8  entered.

9      When do you want to come back?

10      MR. NIRO:  Well --

11      THE COURT:  And have there been any settlement

12  discussions?

13      MR. NIRO:  There was a settlement meeting between the

14  principals without attorneys, which sometimes is the best way

15  to --

16      THE COURT:  Especially in these cases, no offense.

17      MR. NIRO:  -- do that if you get the lawyers out of

18  the mix.

19      THE COURT:  Yeah.

20      MR. NIRO:  But it was not successful.  So at this

21  time --

22      THE COURT:  What kind of pumps are these infusers?

23  What are they?

24      MR. SCHARFF:  Well, they are -- they are the

25  electronic bedside unit that pumps medication slowly over time

1  to the patient.

2          THE COURT:  Okay.  There is no Baxter Healthcare

3  involvement in this at all, is there?

4          MR. SCHARFF:  No.

5          THE COURT:  Okay.  In any way, shape or form?

6          MR. SCHARFF:  No, nothing.

7          THE COURT:  Okay.  Because every time I hear medical

8  infusion, my husband works as a corporate counsel at Baxter, so

9  I want to just make sure that at some point they are not going

10  to be involved in this case or brought into this case in any

11  way.

12          MR. SCHARFF:  No.

13          THE COURT:  Okay.  Good.

14          All right.

15          MR. SCHARFF:  Your Honor, we did have one final thing

16  to raise.

17          THE COURT:  Sure.

18          MR. SCHARFF:  And it may be a bit premature.

19  Carefusion did serve its own document requests to Braun a

20  little bit later than Braun served their document requests.

21          THE COURT:  Uh-huh.

22          MR. SCHARFF:  But one concern that we have is that

23  Braun doesn't insist on Carefusion, you know, producing its

24  documents so quickly.  But yet Braun then takes till after

25  (unintelligible) to produce its own documents.

1    THE COURT:  Well, you have a right to file the motion

2  too.  I have got one motion --

3    MR. NIRO:  The responses aren't even due yet to the

4  Court, so --

5    THE COURT:  You know, I mean, just -- you know, I

6  would expect to -- given the amount of time that they have

7  waited for their documents, that you would be at least

8  reasonable with respect to any extension they might require on

9  production of their own documents.

10    MR. SCHARFF:  Yes.  Absolute --

11    THE COURT:  A reasonable extension.

12    MR. SCHARFF:  Absolutely, your Honor.  But at the same

13  time, you know, since they have been insisting on getting our

14  documents, you know --

15    THE COURT:  Actually they haven't.

16    MR. SCHARFF:  Four months --

17    THE COURT:  They haven't really insisted until

18  recently.

19    MR. NIRO:  We (unintelligible) four months.

20    THE COURT:  Four months.

21    MR. SCHARFF:  Well, but also to give you some

22  background, they may -- moved to compel two weeks after our

23  objections -- less than two weeks -- eleven days after our

24  objections were due, insisting on us producing all of our

25  documents essentially immediately.  Where normally the parties

1    are able to work out mutually, if it is given that, you know,

2    they are going to have hundreds of thousands of pages of

3    documents to produce, a mutual plan that works for both

4    parties, especially --

5            THE COURT:  Well --

6            MR. SCHARFF:  -- given that discovery doesn't close

7    until October.

8            THE COURT:  Right.  But that will be here before you

9    know it.  In my world October is right around the corner.

10   Probably in yours as well.  I mean, it sounds like a long time,

11   but, you know, it is not.  I'm already scheduling things well

12   into July and August (unintelligible) like this.

13           So, you know, everybody -- I hope you work well

14   together.  It will make everyone's life a lot happier and

15   nicer, especially mine.

16           But, you know, I deal with the -- your points -- your

17   point has been raised.  He has heard it.  I have heard it.  I

18   hope you're all reasonable.  But this was the only motion to

19   compel here, and that's what I have ruled on.

20           MR. SCHARFF:  Okay.

21           THE COURT:  Okay.

22           MR. NIRO:  Thank you, your Honor.

23           THE COURT:  All right.

24           MR. SCHARFF:  Thank you, Judge.

25           MR. SKOPETS:  Thank you, your Honor.

```
 1          THE COURT:  Did I tell you -- give you a date?

 2          MR. NIRO:  Oh, the next date.

 3          THE COURT:  Yeah.  What do you think?

 4          MR. NIRO:  I don't know what kind of timetable your

 5   Honor --

 6          THE COURT:  Well --

 7          MR. NIRO:  -- four weeks --

 8          THE COURT:  -- I think -- I think probably -- I think

 9   I probably should check in with you -- let's see.  I'll see you

10   in the first part of May.

11          Vernita, give them a date the week of May 7th --

12          THE CLERK:  Okay.

13          THE COURT:  -- towards the end of the week.

14          And I will -- if you --

15          THE CLERK:  (Unintelligible) okay?

16          THE COURT:  Yeah.

17          And if you have any issues with respect to the

18   interrogatory answers, which you should have by then, you can

19   notice that motion up for that day so we can deal with it.

20   Hopefully that won't be necessary.

21          And then -- you know, and then we'll schedule -- we'll

22   probably do another one -- we'll schedule that date for that,

23   and then we'll see where we go.

24          But you should already know this, Mr. Niro.  I don't

25   know that I have had you guys before.  If you do -- if you do
```

1   reach an impasse on discovery, I want you to sit down

2   together.  Buy each other a cup of coffee.  That's not required

3   under my rule.  But a face-to-face meeting is before you file a

4   motion to compel.

5           MR. SCHARFF:  Okay.

6           THE COURT:  Try to work it out.

7           If you can't, I have no problem doing motions to

8   compel.  If I did, I would be in the wrong job.  So, you know,

9   I'm happy to deal with them.  But I like you to make a good

10  faith effort to work it out.

11          And all of these things work -- to be worked out --

12          MR. NIRO:  We'll do that, your Honor.

13          THE COURT:  -- including -- how many depositions do

14  you think you guys are going to be taking before the claim

15  construction?

16          MR. SCHARFF:  I'm not sure.  I know -- I think we have

17  a limit of ten.

18          THE COURT:  Uh-huh.

19          MR. SCHARFF:  I'm not entirely sure.

20          THE COURT:  Okay.

21          MR. NIRO:  It is too early to say.

22          THE COURT:  Okay.  All right.  Well, you know, try to

23  be reasonable with respect to those things as well.  Okay?

24          MR. NIRO:  Absolutely.

25          MR. SCHARFF:  Absolutely.

1          THE COURT:  Welcome to the case.

2          MR. SCHARFF:  Thank you.

3          THE COURT:  And I will see you in a few weeks.

4          MR. NIRO:  May 10th.  Is it 9:30?

5          THE COURT:  9:30, yeah.

6          MR. NIRO:  Okay.

7          THE COURT:  Thank you.

8          MR. NIRO:  Thank you, Judge.

9      (Which concluded the proceedings in the above-entitled

10  matter.)

11                         CERTIFICATE

12          I HEREBY CERTIFY that the foregoing is a true, correct

13  and complete transcript of the proceedings had at the hearing

14  of the aforementioned cause on the day and date hereof.

15

16  /s/Pamela S. Warren                    April 12, 2012
    Official Court Reporter                     Date
17  United States District Court
    Northern District of Illinois
18  Eastern Division

19

20

21

22

23

24

25